Argued and submitted July 25, affirmed November 12, 1986

HALVORSON et al,
*Petitioners,*

*v.*

LINCOLN COUNTY et al,
*Respondents.*

(86-009; CA A40511)

728 P2d 77

Garry P. McMurry, Portland, argued the cause for petitioners. With him on the brief was Rankin, McMurry, VavRosky & Doherty, Portland.

Robert C. Shoemaker, Portland, argued the cause for respondents. With him on the brief were Lindsay, Hart, Neil & Weigler, Portland, and Nancy Craven, Newport.

Before Warden, Presiding Judge, and Van Hoomissen and Young, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

Petitioners seek review of part of a Land Use Board of Appeals (LUBA) order concerning an amendment to the urban growth boundary (UGB) of the City of Depoe Bay. ORS 197.805 *et seq.* The amendment incorporated the Whale Cove subdivision south of the city into the UGB. LUBA remanded the amendment to the county because of the county's failure to address the economic, social, environmental and energy (ESEE) consequences of the change. However, LUBA rejected petitioner's claim that the county had failed to show that the land was committed to urban development under the "locational" factors of Goal 14. Petitioners assign that conclusion as error. We affirm.

The Whale Cove subdivision is a 24-acre parcel of land, bordered on the east and south by Highway 101, on the west by the Pacific Ocean, and on the north by the Little Whale Cove subdivision, which is inside the Depoe Bay city limits and the UGB. Although it has been a platted subdivision for some years, Whale Cove has only a few houses, primarily because the lots are too small for septic tanks and there is no sewer service. Little Whale Cove received sewer service in the 1970's. As part of that project, respondent McDonald, who owns most of the land in Whale Cove, paid for "oversizing" a short distance of pipe which could eventually be extended to the Whale Cove subdivision. Other than sewers, the two subdivisions receive comparable services, generally from the same sources.

Petitioners contend that "LUBA's order is unlawful in that it repeals factors (1) and (2) of Goal 14 by reason of a nebulous plan to serve the county's land in question with a sewer some time in the future, contrary to the limited exemption recognized in [*City of Salem v. Families for Responsible Govt,* 64 Or App 238, 243, 668 P2d 395 (1983), *reversed on other grounds,* 298 Or 574, 694 P2d 965, *on remand* 73 Or App 620, 700 P2d 268 (1985)]." They argue that the lack of sewer service in or at the boundary of Whale Cove shows that it is not committed to urban development.[1] Respondents argue that the area is committed, in part because sewers can be

---

[1] The parties agree that the county cannot justify adding Whale Cove to the Depoe Bay UGB on the basis of need.

extended to it, and that the extension of the UGB is necessary to provide the Whale Cove subdivision with sewer service. Thus, petitioners treat the lack of sewers as proof that the land is not committed, while respondents treat the need for sewers as proof that it is.

We do not find it necessary to resolve the dispute. If an area does not qualify for inclusion in an UGB because it does not satisfy the first two—"need"—factors of Goal 14, it may still be included if an examination of the remaining five—"locational"—factors shows that it is committed to urban uses.[2] *City of Salem v. Families For Responsible Govt, supra.* The local government must balance those factors in order to determine whether, on the whole, the area is committed. The process is not a mechanical one of adding so many points for one factor and subtracting so many for another. Rather, the overall picture must show commitment. In a portion of its decision which respondents do not challenge, LUBA held that the county had not adequately evaluated the ESEE consequences of including the area in the UGB. As a result, the county must reconsider its decision. We cannot know at this stage what contribution the lack of sewers will make to the picture after the county has developed the additional information or whether that contribution will tend to show commitment or non-commitment. Because we cannot, any more than can the county, rule on the role one isolated factor may play in showing that the land is committed, there is no statutory basis to upset the challenged order. ORS 197.850(9).

---

[2] Goal 14 provides in part:

"Establishment and change of the boundaries shall be based upon consideration of the following factors:

"(1) Demonstrated need to accommodate long-range urban population growth requirements consistent with LCDC goals;

"(2) A need for housing, employment opportunities, and livability;

"(3) Orderly and economic provision for public facilities and services;

"(4) Maximum efficiency of land uses within and on the fringe of the existing urban areas;

"(5) Environmental, energy, economic and social consequences;

"(6) Retention of agricultural land as defined, with Class I being the highest priority for retention and Class VI the lowest priority; and

"(7) Compatibility of the proposed urban uses with nearby agricultural activities."

Affirmed.