Argued and submitted February 16, affirmed April 5, reconsideration denied May 26, petition for review allowed July 13, 1989 (308 Or 184)
See 308 Or 467 (1989)

## MULTNOMAH COUNTY,
*Petitioner,*

*v.*

## CITY OF FAIRVIEW et al,
*Respondents.*

(LUBA 88-076; CA A50861)

771 P2d 289

John L. DuBay, Assistant County Counsel, Portland, argued the cause for petitioner. With him on the brief was Laurence Kressel, County Counsel for Multnomah County, Oregon.

William L. Brunner, Portland, argued the cause and filed the brief for respondent City of Fairview.

Peter D. Adamco, Portland, argued the cause for respondent Don Toombs Trucking, Inc. With him on the brief

were John Spencer Stewart, and Stafford, Frey, Cooper & Stewart, Portland.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

In 1987, the City of Fairview annexed an area that includes property owned by respondent Don Toombs Trucking, Inc. At that time, the property was designated "urban future" in Multnomah County's comprehensive plan, and as parks and open space on the city's plan map. However, the city's plan provided:

"Land use classifications for areas outside the Fairview City limits are only recommendations. The Multnomah County Comprehensive Plan and zoning will regulate land use in these areas until such time as they are annexed to the City of Fairview."

The year after it annexed the property, the city changed its zoning to a heavy manufacturing designation. The county appealed to LUBA, contending that that rezoning was inconsistent with the city's comprehensive plan. LUBA concluded that, under ORS 215.130(2), the county's, rather than the city's, plan was applicable, and it therefore rejected the county's arguments that the decision violated the latter. The county seeks review, and we affirm.[1]

ORS 215.130(2)(a) provides:

"An ordinance designed to carry out a county comprehensive plan and a county comprehensive plan shall apply to:

"(a)   The area within the county also within the boundaries of a city as a result of extending the boundaries of the city or creating a new city unless, or until the city has by ordinance or other provision provided otherwise * * *."

LUBA relied on the construction of that statute in *City of Salem v. Families for Responsible Govt*, 298 Or 574, 694 P2d 965 (1985), where the court said:

"The narrow issue before us in this case is the effect of a city's incorporation within an acknowledged UGB on judicial review of that part of the acknowledged plan that includes the geographic area of the new city. Because Marion County

---

[1] The county owns property in the vicinity of Toombs', and it appears in its capacity as a dissatisfied property owner rather than in its governmental capacity.

LUBA simultaneously decided the county's appeal from the city's somewhat related decision to issue a conditional use permit to respondent, under the former zoning, to allow commercial aggregate operations. LUBA's disposition of that appeal is not challenged here.

adopted the comprehensive plan at issue and because the implementing land use regulations for the area in question are Marion County ordinances, we conclude that ORS 215.130(2) applies to this case. Thus, unless or until a new city adopts its own plan providing otherwise, the new city incorporated within an acknowledged UGB must comply with the acknowledged plan and implementing land use ordinances for the geographic area of which it is a part. To hold otherwise would mean that a newly incorporated city would not have the benefit of operating under an acknowledged plan and implementing ordinances." 298 Or at 581.

■    The county argues that this case differs, because Fairview is not a new city but an existing city with an acknowledged plan. Moreover, the city decision was based on its own zoning legislation and, according to the county, that legislation is subordinate to and must be applied consistently with the city's plan. *See Baker v. City of Milwaukie*, 271 Or 500, 533 P2d 772 (1975). The county concludes that LUBA's application of ORS 215.130(2)(a) to these facts extends the statute beyond its intended reach and has the anomalous result of splitting land use responsibilities and requiring "one jurisdiction's ordinances * * * to conform to another jurisdiction's comprehensive plan." The county further observes:

"While comprehensive plans must be coordinated with the plans of other affected jurisdictions, zoning ordinances need not conform with plans of other jurisdictions. A jurisdiction's land use regulations must implement only its own comprehensive plan."

Although there is much abstract logic to the county's argument, it is contrary to the language of ORS 215.130(2). The statute applies in plain terms to annexed areas as well as to newly incorporated areas, and it makes the county plan applicable until the city provides otherwise. It makes no exception for situations where the city applies its own zoning but has not yet elected to apply its own plan rather than the county's to the annexed area. The problems that the county discerns demonstrate little more than that different statutes have different applications. The requirements that a locality's land use regulations be applied consistently with its plan, ORS 197.175(2), and that local plans within a region be coordinated, ORS 197.015(5); ORS 197.190, are simply irrelevant

in circumstances where a local government is expressly excused by statute from having or applying its own plan.[2]

■ The county also argues that the city has provided, by ordinance or otherwise, that its plan, instead of the county's, applies to the property. It bases the argument, *inter alia,* on the plan provision, quoted above, that its pre-annexation classifications are only recommendations and that the county's plan and zoning are applicable to the areas "until such time as they are annexed" to the city. The county emphasizes the "until such time" phrase, and understands the provision to mean that, immediately after annexation, the city's plan replaces the county's as the applicable one and the "recommendations" in it automatically become the zoning designations of the acquired areas. We disagree.

The first sentence of the provision clearly states that the extraterritorial zoning classifications are only advisory. The second sentence consists of the truism that the county plan applies to unincorporated areas and also the somewhat ambiguous phrase on which the county relies. Read in context, we do not think that "until such time as they are annexed" means that the city plan and zoning come into operation with the occurrence of annexation. The principal point of the provision is that the city has made no zoning *decisions,* as distinct from recommendations, concerning the areas. Therefore, some action other than and after annexation would be necessary before the city *could* change the zoning designations that applied to the areas under the county's plan and give effect to the designations in its own plan. We conclude that the city has not yet provided that the county's plan became inapplicable to the property.

Affirmed.

---

[2] We are not called upon here to decide whether a city's plan can achieve periodic compliance if, by the time of that review, it makes no provision for territory acquired after acknowledgment.